IQBAL v BRISTOL WEST INSURANCE GROUP

Docket No. 275847. Submitted February 5, 2008, at Detroit. Decided February 14, 2008, at 9:00 a.m.

Wasim Iqbal brought an action in the Wayne Circuit Court to recover personal protection insurance benefits under the no-fault insurance act, MCL 500.3101 *et seq.*, for injuries he sustained when the car he was driving was rear-ended. Iqbal was covered by a household insurance policy issued by Bristol West Insurance Group to his sister, with whom he lived. The car was titled and registered to Iqbal's brother, who insured it through Auto Club Insurance Association. Bristol West argued that Iqbal should be considered the "owner" of the car under MCL 500.3101(2)(g)(i) because Iqbal had the use of it for more than 30 days and was therefore required to maintain insurance on it in order to collect personal protection insurance benefits pursuant to MCL 500.3113(b). The court, Wendy M. Baxter, J., concluded that whether Iqbal was the owner of the car was irrelevant in determining whether MCL 500.3113(b) applied to Iqbal because the car itself was insured. Bristol West appealed by delayed leave granted.

The Court of Appeals *held*:

MCL 500.3113(b), which precludes recovery of personal protection insurance benefits for a person who is the owner of a vehicle but has not insured it, links the security or insurance requirement to the vehicle only and not to a person; therefore, the trial court correctly ruled that Iqbal was entitled to personal protection insurance benefits regardless of whether Iqbal could have been considered the owner of the vehicle because the vehicle was in fact insured.

Affirmed.

INSURANCE — NO-FAULT — VEHICLE OWNERS.

The statutory provision that precludes the owner of a vehicle from being entitled to personal protection insurance benefits for injuries arising from a motor-vehicle accident if the security required by the no-fault act was not in effect does not apply in cases where the vehicle itself is insured (MCL 500.3101[1], 500.3113[b]).

*Hathaway & Hathaway* (by *Daniel A. Hathaway*) for Wasim Iqbal.

*Plunkett & Cooney, P.C.* (by *Ernest R. Bazzana* and *Hans H.J. Pijls*), for Bristol West Insurance Group.

*Schoolmaster, Hom, Killeen, Siefer, Arene & Hoehn* (by *Elaine I. Harding*) (*John A. Lydick*, of counsel), for Auto Club Insurance Association of Michigan.

Before: FITZGERALD, P.J., and MURPHY and BORRELLO, JJ.

MURPHY, J. Defendant Bristol West Insurance Group appeals by delayed leave granted orders of the trial court granting summary disposition in favor of plaintiff and the remaining parties and against Bristol in this case arising out of a motor-vehicle accident in which plaintiff, the driver of a car that was rear-ended at a stoplight, was injured. Plaintiff received medical treatment for his injuries from intervening plaintiffs Oakwood Hospital and Heritage Hospital. Plaintiff resided with his sister and fell under the umbrella of a household no-fault insurance policy issued by Bristol. The vehicle, which was titled and registered in the name of plaintiff's brother, was insured by defendant Auto Club Insurance Association of Michigan.[1] Bristol argued that plaintiff should be considered the "owner" of the vehicle under MCL 500.3101(2)(g)(i) because he had the use of his brother's vehicle for a period greater than 30 days. Therefore, according to Bristol, plaintiff was required to maintain insurance on the vehicle under the no-fault act, MCL 500.3101 *et seq.*, despite the fact that

---

[1] Defendant Citizens Insurance Company of America was the insurer assigned to this matter by the Michigan Assigned Claims Facility (MACF).

plaintiff's brother already had the vehicle insured by Auto Club. Bristol contended that, because plaintiff failed to insure the vehicle under MCL 500.3101(1), plaintiff was not entitled to collect personal protection insurance (PIP) benefits pursuant to MCL 500.3113(b). The trial court concluded that the issue regarding whether plaintiff was the "owner" of the vehicle under MCL 500.3101(2)(g)(i) was irrelevant for purposes of analysis under MCL 500.3113(b), where the vehicle was specifically insured by plaintiff's brother. Because the language in MCL 500.3113(b) precluding recovery of PIP benefits links the security or insurance requirement to the vehicle only and not the person, the trial court correctly ruled that plaintiff was entitled to PIP benefits because the vehicle was in fact insured, regardless of whether plaintiff was the "owner" of the vehicle. Accordingly, we affirm.

### I. BASIC FACTS AND PROCEDURAL HISTORY

Plaintiff did not hold record title to any vehicle, and in January of 2004, he was residing with his sister in her home. She owned a Ford Explorer that was insured by Bristol. The accident occurred on January 15, 2004, when plaintiff was driving his brother's car, which was insured by Auto Club. Plaintiff was stopped at a red light waiting for a fire truck to pass when he was rear-ended. As a result of the accident, plaintiff suffered a back injury and was hospitalized for 10 days. He received cortisone shots and epidurals along with physical therapy. Plaintiff eventually underwent back surgery at Oakwood and received follow-up care at Heritage. He was not covered by any health insurance policy at the time. Plaintiff sought PIP benefits for the payment of his hospital and medical bills, as well as for payment to his mother, who acted as his caregiver following the accident and surgery.

The car plaintiff was driving when he was rear-ended was a 2000 BMW that was titled in his brother's name. In his answers to interrogatories, plaintiff indicated that the BMW "belonged to my brother but I had primary possession." Bristol seized on this response in support of its proposition that plaintiff should be considered an owner of the car. Plaintiff testified in his deposition that he had his brother's permission to drive the BMW when his brother did not need it. He had his own set of keys. Plaintiff's brother would indicate ahead of time if he needed the BMW, but otherwise plaintiff could use the car at will, without asking permission each time. Plaintiff had been using the BMW "[o]ff and on since March of 2003." The BMW was often in the repair shop, so plaintiff could not use it during those intervals. Also, his brother had a second car that plaintiff was not permitted to drive, and when that vehicle was in the shop, his brother used the BMW, precluding plaintiff's use. Plaintiff indicated that he used the BMW several times a week. He sometimes drove the car to class, but he also carpooled with friends to class. Plaintiff occasionally used the BMW to go out on dates. He also used various additional vehicles owned by other family members. Plaintiff indicated that the BMW was "the extra car that the entire family had" at its disposal, as his brother also permitted other family members to drive the BMW. Plaintiff did not have a set of keys for any other family vehicle except the BMW.

After plaintiff filed suit to recover PIP benefits, Citizens moved for summary disposition, arguing that Bristol, as a matter of statutory priority, was required to handle the claim for no-fault benefits because of plaintiff's status as a resident in the home of his sister, who was insured through Bristol, and that plaintiff, therefore, was not eligible to receive no-fault benefits from

Citizens by way of the Michigan Assigned Claims Facility (MACF). Auto Club then filed a motion for summary disposition, concurring in Citizens' motion that Bristol was responsible for paying no-fault benefits to plaintiff. Intervening plaintiffs Oakwood and Heritage also filed motions for summary disposition, maintaining that Bristol was responsible for paying plaintiff's hospital costs as part of the PIP benefits owing to plaintiff. Plaintiff likewise filed a motion for summary disposition against Bristol, echoing the arguments presented by the other parties.

In response to these motions, Bristol argued that plaintiff was the constructive owner of the BMW. Bristol contended that plaintiff was an "owner" of the vehicle, as that term is defined in MCL 500.3101(2)(g)(i), because he had use of the car for more than 30 days; therefore, plaintiff was required to obtain insurance on the vehicle under MCL 500.3101(1), and his failure to do so precluded recovery of PIP benefits under MCL 500.3113(b). Bristol asserted that, minimally, there existed a genuine issue of material fact concerning the issue of ownership.

The trial court ruled against Bristol on all the motions, entering judgments in favor of Citizens and Auto Club, a judgment in favor of plaintiff in the amount of $41,592, and a judgment in favor of Oakwood and Heritage in the amount of $68,871, which was later reduced to $66,871. Bristol moved for reconsideration, again arguing that whether plaintiff was an "owner" of the BMW at the time of the accident was a question of fact for the jury, but the motion was denied. The trial court found that the issue regarding whether plaintiff was the "owner" of the vehicle under MCL 500.3101(2)(g)(i) was irrelevant for purposes of analysis under MCL 500.3113(b), where the vehicle was specifi-

cally insured by plaintiff's brother. The trial court subsequently denied Bristol's motion for relief from judgment.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Kreiner v Fischer*, 471 Mich 109, 129; 683 NW2d 611 (2004). We similarly review an issue of statutory construction, which constitutes a question of law, de novo on appeal. *Mt Pleasant v State Tax Comm*, 477 Mich 50, 53; 729 NW2d 833 (2007).

## III. PRINCIPLES OF STATUTORY CONSTRUCTION

The primary goal in construing a statute is to effectuate the Legislature's intent, and the first step in the process of interpreting a statute and divining legislative intent is to examine the language of the statute. *Mt Pleasant, supra* at 53. The words contained in a statute provide us with the most reliable evidence of the Legislature's intent. *Shinholster v Annapolis Hosp*, 471 Mich 540, 549; 685 NW2d 275 (2004). In ascertaining legislative intent, this Court gives effect to every word, phrase, and clause in the statute. *Id.* We must consider both the plain meaning of the critical words or phrases, as well as their placement and purpose in the statutory scheme. *Id.* This Court must avoid a construction that would render any part of a statute surplusage or nugatory. *Bageris v Brandon Twp*, 264 Mich App 156, 162; 691 NW2d 459 (2004). "The statutory language must be read and understood in its grammatical context, unless it is clear that something different was intended." *Shinholster, supra* at 549 (citation and internal quotation omitted). "If the statutory language is unambiguous, the Legislature is presumed to have

intended the meaning expressed in the statute and judicial construction is not permissible." *Mt Pleasant, supra* at 53. An unambiguous statute must be enforced as written. *Shinholster, supra* at 549. "A necessary corollary of these principles is that a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002).

IV. ANALYSIS

The purpose of the Michigan no-fault act "is to broadly provide coverage for those injured in motor vehicle accidents without regard to fault." *Cole v Auto-Owners Ins Co*, 272 Mich App 50, 55; 723 NW2d 922 (2006). Under the no-fault act, "[t]he owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance." MCL 500.3101(1). Pursuant to MCL 500.3101(2)(g), the term "owner" is statutorily defined, in pertinent part, as follows:

> (i) A person renting a motor vehicle or having the use thereof, under a lease or otherwise, for a period that is greater than 30 days.

> (ii) A person who holds the legal title to a vehicle, other than a person engaged in the business of leasing motor vehicles who is the lessor of a motor vehicle pursuant to a lease providing for the use of the motor vehicle by the lessee for a period that is greater than 30 days.

There is no dispute that plaintiff's brother is considered an owner under the no-fault act, given that he holds legal title to the BMW, MCL 500.3101(2)(g)(ii). The parties do, however, dispute whether plaintiff also

qualifies as an owner under MCL 500.3101(2)(g)(i). In *Ardt v Titan Ins Co*, 233 Mich App 685, 690-691; 593 NW2d 215 (1999), this Court construed MCL 500.3101(2)(g)(i), stating:

> [W]e hold that "having the use" of a motor vehicle for purposes of defining "owner," MCL 500.3101(2)(g)(i); MSA 24.13101(2)(g)(i), means using the vehicle in ways that comport with concepts of ownership. The provision does not equate ownership with any and all uses for thirty days, but rather equates ownership with "having the use" of a vehicle for that period. Further, we observe that the phrase "having the use thereof" appears in tandem with references to renting or leasing. These indications imply that ownership follows from *proprietary* or *possessory* usage, as opposed to merely incidental usage under the direction or with the permission of another. [Emphasis in original; see also *Chop v Zielinski*, 244 Mich App 677, 680; 624 NW2d 539 (2001).]

In *Twichel v MIC Gen Ins Corp*, 469 Mich 524, 530-531; 676 NW2d 616 (2004), our Supreme Court added the following clarification to this Court's holdings in *Ardt* and *Chop*:

> Nothing in the plain language of MCL 500.3101(2)(g)(i) requires (1) that a person has at any time *actually used* the vehicle, or (2) that the person has *commenced* using the vehicle at least thirty days before the accident occurred. The statute merely contemplates a situation in which the person *is renting or using* a vehicle for a period that is greater than thirty days. [Emphasis in original.]

"There may be multiple owners of a vehicle for purposes of the no-fault act." *Chop, supra* at 681.

While the parties present reasoned arguments with respect to the issue of plaintiff's ownership status under MCL 500.3101, and there is some merit to both sides of the question, we ultimately find it unnecessary to determine whether plaintiff was an owner of the vehicle

at the time of the accident under *Twichel*, *Ardt*, and *Chop* because our interpretation of MCL 500.3113(b) renders the question irrelevant. MCL 500.3113(b) provides, in pertinent part, as follows:

> A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:
>
> * * *
>
> (b) The person was the owner or registrant of a motor vehicle or motorcycle involved in the accident with respect to which the security required by section 3101 or 3103 was not in effect.

Viewing the statutory language in the context of the given facts, the statute would preclude plaintiff from being entitled to PIP benefits if plaintiff "was the owner . . . of [the BMW] . . . involved in the accident with respect to which the security required by section 3101 . . . was not in effect." As part of the process of construing MCL 500.3113(b), we shall make the assumption that plaintiff was an "owner" of the BMW, as that term is defined in MCL 500.3101(2)(g)(i). Next, the phrase "with respect to which the security required by section 3101 . . . was not in effect," § 3113(b), when read in proper grammatical context, defines or modifies the preceding reference to the *motor vehicle involved in the accident*, here the BMW, and not the person standing in the shoes of an owner or registrant. The statutory language links the required security or insurance solely to the vehicle. Thus, the question becomes whether the BMW, and not plaintiff, had the coverage or security required by MCL 500.3101. As indicated above, the coverage mandated by MCL 500.3101(1) consists of "personal protection insurance, property protection in-

surance, and residual liability insurance."[2] While plaintiff did not obtain this coverage, there is no dispute that the BMW had the coverage, and that is the only requirement under MCL 500.3113(b), making it irrelevant whether it was plaintiff's brother who procured the vehicle's coverage or plaintiff. Stated differently, the security required by MCL 500.3101(1) was in effect for purposes of MCL 500.3113(b) as it related to the BMW.

Further support for our holding is found in *Jasinski v Nat'l Indemnity Ins Co*, 151 Mich App 812; 391 NW2d 500 (1986). The case involved "a dispute over which insurance company [was] liable for payment of no-fault benefits to [the] plaintiff for injuries sustained when he slipped and fell while alighting from the cab of a tractor-trailer." *Id.* at 814. The tractor was owned by Newell Snyder, the plaintiff's employer, but Snyder had leased the tractor to E. T. VanderArk & Son, Inc. (VanderArk), for six months. VanderArk owned the trailer, and the tractor was to be used in connection with the trailer, with the plaintiff operating the vehicle. Snyder, as the lessor, contracted to provide insurance coverage for the tractor. During the lease period, the plaintiff was alighting from the cab of the tractor when

---

[2] To construe MCL 500.3101(1) as requiring anything more in relation to the vehicle and in the context of its interrelationship with MCL 500.3113(b) would be problematic. The problem is that, assuming MCL 500.3113(b), as influenced by MCL 500.3101(1), was meant to demand that each and every owner maintain insurance on a particular vehicle or lose a right to receive PIP benefits, regardless of whether the vehicle is already covered by insurance, an owner who actually obtained insurance could be denied a right to recover PIP benefits. For example, if two persons qualified as owners of a particular vehicle under MCL 500.3101(2)(g), and only one of the owners maintained insurance, the owner who obtained insurance would be precluded from receiving PIP benefits under MCL 500.3113(b) because that person would be an owner of a vehicle with respect to which the insurance required by MCL 500.3101 was not in effect, as *all* the owners had not procured coverage for the vehicle.

he slipped on the running board and suffered an injury. The plaintiff sought PIP benefits from the insurer of the tractor, National Indemnity Insurance Company, which initially paid benefits under protest and then ceased payments. The plaintiff sued National Indemnity, and eventually American Universal Insurance Company, the insurer of the *trailer* that issued a policy to VanderArk, was brought into the action. National Indemnity sought reimbursement from American Universal for PIP benefits paid to the plaintiff, but the trial court granted summary disposition in favor of American Universal. *Id.* at 814-816.

This Court first noted that it was indisputable that the National Indemnity policy covered the tractor; however, the policy contained an exclusionary clause that would preclude recovery of PIP benefits by the plaintiff, but only if there was no other valid insurance. Thus, the question became whether the American Universal policy covered the *tractor*, triggering the application of the exclusionary clause and relieving National Indemnity of liability for the payment of PIP benefits. The American Universal policy that was issued to VanderArk covered "owned autos," but the list of autos contained in the policy did not identify the tractor at issue. National Indemnity argued that VanderArk owned the tractor under the Michigan Vehicle Code pursuant to MCL 257.37, which defined "owner," comparable to the definition in MCL 500.3101(2)(g)(i), as "[a]ny person, firm, association, or corporation renting a motor vehicle or having the exclusive use thereof, under a lease or otherwise, for a period of greater than 30 days."[3] *Jasinski, supra* at 816-818. In response to

---

[3] MCL 257.37 was amended in 1988 pursuant to 1988 PA 125; however, the language at issue here remained nearly identical without any relevant difference. See MCL 257.37(a).

National Indemnity's argument, the *Jasinski* panel, citing and relying on *State Farm Mut Automobile Ins Co v Sentry Ins*, 91 Mich App 109; 283 NW2d 661 (1979), stated:

> The basic requirement of the no-fault act is that all vehicles be covered by a policy providing no-fault benefits. Section 3101 of the act requires the owner or registrant of a motor vehicle to maintain security for payment of benefits under personal protection insurance. Section 3102(2) makes it a misdemeanor to fail to provide such security. This does not mean, however, that each owner or registrant must have *a* separate policy covering the vehicle, but only that there be a policy covering the vehicle.
>
> In this case, the no-fault act has been satisfied because Snyder, the titled owner of the tractor, maintained security for payment of no-fault benefits as required by the lease agreement. For this reason, we do not believe VanderArk was also required to maintain insurance on the tractor nor did the parties so contemplate. [*Jasinski, supra* at 818-819 (citations omitted; emphasis in original).]

Although *Jasinski* did not address MCL 500.3113 and involved different facts, the gist of the holding was that, while VanderArk may have been considered the owner of the tractor pursuant to statute, VanderArk was not required to procure an additional insurance policy on the tractor under the no-fault act. Interestingly, as indicated above, *Jasinski* made reference to the misdemeanor provision found in MCL 500.3102(2), which was addressed in *State Farm, supra,* and which we shall discuss below because of the particular language used by the Legislature.

In *State Farm,* an employee was injured while driving a company vehicle, and the registered titleholder of the car was Bob Owens Sales, Inc. (the company). Sentry Insurance had issued to the company a no-fault policy that covered the business vehicle. The car had also been

used for quite some time as a family car by Mrs. Owens personally. The injured employee had insurance through State Farm, which paid the employee no-fault benefits under the policy when Sentry refused to cover the claim. State Farm proceeded to sue Sentry to recoup the payments, arguing that the employee was the occupant of a motor vehicle owned or registered by the company, thereby implicating the Sentry policy under MCL 500.3114(3). Sentry countered that the employee was employed by Mr. and Mrs. Owens personally and not the company, and the car was solely owned and registered by the company. The trial court agreed with Sentry that, because the vehicle was not owned or registered by the actual employer, Mr. and Mrs. Owens, Sentry did not need to provide coverage. On appeal, State Farm argued that Mrs. Owens was an "owner" of the car under the Michigan Vehicle Code, specifically MCL 257.37, and therefore Sentry should have provided no-fault benefits to the injured employee under Sentry's policy that covered the car. *State Farm, supra* at 111-113.

In reversing the trial court's ruling, this Court held that the definition of "owner" under MCL 257.37 should be read into the no-fault act in determining priorities between insurance providers and that State Farm could attempt to establish that Mrs. Owens was an owner under the statute on remand. *State Farm, supra* at 113-114. The *State Farm* panel rejected Sentry's contention that such an expansive interpretation of the term "owner" would subject numerous individuals to criminal liability under MCL 500.3102(2). *State Farm, supra* at 115. At the time, MCL 500.3102(2) provided:

> An owner or registrant of a motor vehicle with respect to which security is required who operates the motor vehicle or permits it to be operated upon a public highway in this state without having in full force and effect security

complying with this section or sections 3101 or 3103 is guilty of a misdemeanor. [1975 PA 329; see also *State Farm, supra* at 115.][4]

The *State Farm* panel, addressing the misdemeanor language contained in former MCL 500.3102(2), held:

> This subsection does not mean that each "owner" or "registrant" must have a separate policy covering the vehicle, but only that there must be *a* policy covering the vehicle. In this case that policy was obtained by the registered title holder, Bob Owens Sales, Inc. Neither Mr. nor Mrs. Owens is criminally liable under this section because the vehicle was, in fact, covered by the required security. [*State Farm, supra* at 115 (emphasis in original).]

There are some striking parallels between MCL 500.3102(2) and the provision at issue here, MCL 500.3113(b). The phrase in MCL 500.3102(2), "with respect to which security is required," also defines or modifies "motor vehicle," and not "the owner or registrant." In other words, a link exists between the required insurance coverage and the vehicle, not between the required insurance coverage and the person who is deemed an owner. The remaining language in MCL 500.3102(2), "who operates the motor vehicle . . . without having in full force and effect security complying with . . . section 3101 . . . is guilty of a misdemeanor," is fairly broad and arguably more encompassing than MCL 500.3113(b), yet the Court still found it inapplicable if the vehicle was insured by one of the owners.

---

[4] The statute has changed little since 1979. MCL 500.3102(2) now provides:

> An owner or registrant of a motor vehicle or motorcycle with respect to which security is required, who operates the motor vehicle or motorcycle or permits it to be operated upon a public highway in this state, without having in full force and effect security complying with this section or section 3101 or 3103 is guilty of a misdemeanor.

Just as this Court in *State Farm* interpreted MCL 500.3102(2) to mean that a misdemeanor is not committed if there is a no-fault policy covering the particular vehicle, regardless of a failure by one "owner" to procure a policy in his or her own name, we hold that MCL 500.3113(b) does not preclude an award of PIP benefits to an "owner" of a vehicle if the vehicle is covered by a no-fault policy, which is the case here.[5]

In further support, we note this Court's observation in *Wilson v League Gen Ins Co*, 195 Mich App 705, 709; 491 NW2d 642 (1992), that "[t]he language of § 3113(b) clearly and unambiguously states that the owner of a vehicle involved in an accident, *where the vehicle had no security required by § 3101* at the time of the accident, is not entitled to personal protection insurance benefits." (Emphasis added.)

This Court's decision in *Ardt, supra,* does not conflict with our ruling. In *Ardt*, Robert Ardt was severely injured while he was driving a pickup truck that was titled in his mother's name. The truck was not insured by Ardt's mother or Ardt, although his mother, with whom he lived, owned another vehicle that was insured by the defendant insurer. The insurer denied coverage, claiming that Ardt, on the basis of use, was the owner of the uninsured truck, and the trial court agreed, granting summary disposition to the insurer. *Ardt, supra* at 687-688.

This Court reversed, holding that there was a genuine issue of material fact concerning whether Ardt was the owner of the truck under MCL 500.3101(2)(g)(i). *Ardt, supra* at 689. However, the *Ardt* panel did reject the plaintiffs' argument that MCL 500.3113(b), by use of the definite article "the" in the statutory language,

---

[5] We recognize that our opinion is contrary to a couple of unpublished opinions from this Court; however, those opinions are not binding under MCR 7.215(J)(1), nor do we find them persuasive.

reflected a legislative intent to preclude only the primary owner from recovering PIP benefits. *Ardt, supra* at 691. This Court ruled:

> Had the Legislature intended the exclusionary effect of MCL 500.3113(b); MSA 24.13113(b) to apply to only a single primary owner for each vehicle, it would have had to indicate that intention more clearly than by use of the definite article in this instance. We hold that where *an uninsured motor vehicle* involved in an accident has more than one owner, all the owners come under the statutory exclusion for personal protection insurance benefits. [*Ardt, supra* at 692 (emphasis added).]

We have no qualms with this analysis, and the distinguishing feature in the case at bar is that the vehicle was indeed insured. The BMW was not, using the words from *Ardt*, "an uninsured motor vehicle." *Ardt, supra* at 692.

### V. CONCLUSION

Because the language in MCL 500.3113(b) precluding recovery of PIP benefits links the security or insurance requirement to the vehicle only and not the person, the trial court correctly ruled that plaintiff was entitled to PIP benefits because the vehicle was in fact insured, regardless of whether plaintiff was the "owner" of the vehicle.

Affirmed.