# STATE OF MICHIGAN

# COURT OF APPEALS

WHITNEY HENDERSON,

        Plaintiff-Appellant,

v

ERIC M. KING, D & V EXCAVATING, LLC,
USAA CASUALTY INSURANCE COMPANY,
ESURANCE PROPERTY AND CASUALTY
INSURANCE COMPANY,

        Defendants-Appellees,

and

VMC CONTRACTING, LLC,

        Defendant.

UNPUBLISHED
November 28, 2017

No. 334105
Macomb Circuit Court
LC No. 2015-002323-NI

Before: METER, P.J., and BORRELLO and RIORDAN, JJ.

PER CURIAM.

Plaintiff appeals by right a July 11, 2016, trial court order granting summary disposition in favor of defendants-appellees. For the reasons set forth in this opinion, we affirm in part, reverse in part, and remand for further proceedings.

## I. FACTS

In July 2014, plaintiff was a 19-year-old college student at Wayne State University who was home on summer break. Plaintiff's parents were divorced when she was young, but she split time living with both her father and mother; plaintiff spent about half of her time at her father's and half of her time at her mother's home. She had a bedroom, clothing and furniture at both homes; plaintiff's driver's license listed her mother's address, but she received mail at both homes.

Plaintiff was the sole owner of a 2004 Dodge Stratus and the car was registered in her name. Plaintiff's father, Edward Henderson, had a no-fault policy with defendant USAA Casualty Insurance Company (USAA). Edward Henderson had several vehicles listed on his policy and it is undisputed that plaintiff's Stratus was listed as an insured vehicle on the USAA

policy and that plaintiff was listed as an operator on the policy. Plaintiff's mother, Valencia Henderson, had a no-fault policy with defendant Esurance Property and Casualty Insurance Company (Esurance).

On July 1, 2014, plaintiff was stopped at a stop light on Gratiot Road when defendant Eric King rear-ended her. At the time of the accident, King was employed by defendant D&V Excavating, LLC (D&V) and driving a truck that was allegedly owned by D&V and defendant VMC Contracting, LLC. Plaintiff suffered injuries to her back and claimed first-party personal injury protection (PIP) benefits under her father's USAA policy. Initially, USAA paid PIP benefits on behalf of plaintiff. However, on July 15, 2015, plaintiff commenced this lawsuit seeking first-party PIP benefits from USAA; plaintiff also sought first-party PIP benefits from Esurance pursuant to her mother's policy. Plaintiff also alleged a negligence claim against King and related claims against defendants D&V and VMC.

On July 29, 2016, USAA moved for summary disposition arguing that Esurance was the highest-priority insurer because plaintiff was domiciled with her mother at the time of the accident. Therefore, as a relative of her mother, Esurance was the highest in priority.

Esurance responded, arguing that plaintiff was domiciled with her father and insured on a policy issued by USAA; therefore, Esurance was not the highest-priority insurer. Moreover, Esurance argued, plaintiff was an uninsured owner of the subject vehicle and was therefore ineligible for PIP benefits under MCL 500.3113(b). Specifically, Esurance argued that plaintiff was the sole owner and registrant of the Stratus; as such, pursuant to MCL 500.3101(1) she was required to maintain an insurance policy in her name. Esurance argued that failure of an owner or registrant to maintain insurance in their name precluded them from recovering PIP benefits pursuant to MCL 500.3113(b). While plaintiff had insurance through her father's policy, plaintiff's father had no ownership interest in the vehicle and therefore the USAA policy did not satisfy the requirement to maintain insurance under MCL 500.3101(1). Esurance cited *Barnes v Farmers Ins Co*, 308 Mich App 1; 862 NW2d 681 (2014), to support the proposition that under the plain language of MCL 500.3113(b), when an owner/registrant of a vehicle fails to maintain insurance coverage in their name, then the owner is ineligible for PIP benefits.

Plaintiff responded, arguing that, with respect to domicile, the relevant factors showed that plaintiff was domiciled with her father. With respect to Esurance's argument regarding a failure to maintain insurance, plaintiff argued that she was a "covered person," under her father's USAA policy; therefore, she had maintained the requisite coverage on her vehicle. Plaintiff cited *Iqbal v Bristol West Ins Group*, 278 Mich App 31; 748 NW2d 574 (2008), to support her argument that the relevant inquiry is whether the vehicle itself was insured, not whether plaintiff was a named insured. Plaintiff argued that *Barnes* was distinguishable because in *Barnes*, the named insured was a neighbor, and the two titled owners of the vehicle did not reside with the insured and were not listed on the policy as operators. Furthermore, plaintiff argued that where a named insured has an "insurable interest," in the vehicle, then coverage complies with the requirements in MCL 500.3113(b). Plaintiff argued that this Court previously found that a parent has an "insurable interest," in their child's vehicle where they have an interest in protecting their child from financial ruin. Finally, plaintiff argued that here, the actual risk to USAA never changed. USAA insured the vehicle and insured plaintiff as an operator of the vehicle. Therefore, the actual risk never changed and coverage should apply.

The trial court held that when an owner of a vehicle does not maintain an insurance policy in their own name, they are not entitled to recover PIP benefits under MCL 500.3113(b) pursuant to *Barnes*, 308 Mich App at 1. The court held that in this case, plaintiff owned the Dodge Stratus, but failed to purchase "her own auto insurance policy for the car," and she was not a "named insured on her father's policy with USAA." The court explained:

> Pursuant to the no-fault act and the *Barnes* holding, Henderson is precluded from recovering benefits under either of her parents' polices because as the sole owner of the car she did not maintain the legally required coverage.

> * * *

> There is no question of fact that the car Henderson was driving at the time of the accident was owned and registered only to herself. There is also no dispute that Henderson did not have the security required by MCL 500.3101, and she is not entitled to be paid personal protection insurance benefits for accidental bodily injury pursuant to MCL 500.3113(b). Therefore, summary disposition in favor of Esurance, as well as USAA, is appropriate.

Having concluded that summary disposition was proper on grounds that plaintiff failed to maintain no-fault insurance in her own name, the court declined to address domicile and highest-priority provider. The trial court entered a written order on March 18, 2016, and denied plaintiff's motion for reconsideration.

Thereafter, defendants King and D&V Excavating moved for summary disposition,[1] arguing that the court's prior determination that plaintiff was uninsured barred her negligence claims against them pursuant to MCL 500.3135(2)(c). The trial court granted summary disposition in favor of defendants King and D&V Excavating on July 11, 2016, and dismissed the entire case. This appeal ensued.

## II. STANDARD OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition to determine whether the moving party is entitled to judgment as a matter of law." *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012). "In reviewing a motion brought under MCR 2.116(C)(10), we review the evidence submitted by the parties in a light most favorable to the nonmoving party to determine whether there is a genuine issue regarding any material fact." *Id*. "A genuine issue of material fact exists when the record leaves open an issue on which reasonable minds could differ." *Bennett v Detroit Police Chief*, 274 Mich App 307, 317; 732 NW2d 164 (2006). To the extent that we must interpret and apply the applicable provisions of the no-fault act, issues involving statutory interpretation involve questions of law that we review de novo. *Silich v Rongers*, 302 Mich App 137, 143; 840 NW2d 1 (2013).

---

[1] Defendant VMC Contracting, LLC, failed to respond to the complaint and was defaulted.

III. ANALYSIS

Plaintiff argues that the trial court erred in concluding that she was uninsured at the time of the accident.

"The purpose of the Michigan no-fault act, MCL 500.3101 *et seq.*, is to broadly provide coverage for those injured in motor vehicle accidents without regard to fault." *Barnes*, 308 Mich App at 6 (quotation marks and citations omitted). The no-fault act, however, requires that an "owner or registrant" "maintain" no-fault insurance as follows:

> The owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance. . . . [MCL 500.3101(1).]

In the event that the required insurance is lacking, MCL 500.3113 provides in relevant part:

> [a] person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:
>
> * * *
>
> (b) The person was the owner or registrant of a motor vehicle or motorcycle involved in the accident with respect to which the security required by [MCL 500.3101 or MCL 500.3103] was not in effect.

In this case, the issue is whether plaintiff had the requisite insurance required by MCL 500.3101(1) when she insured her Dodge Stratus on her father's policy. This Court addressed similar issues in both *Iqbal*, 278 Mich App at 31 and *Barnes*, 308 Mich App at 1 and a review of these cases is therefore pertinent to our analysis.[2]

In *Iqbal*, the plaintiff lived in a home with his sister who had a no-fault policy with the defendant Bristol West Insurance Group (Bristol). *Id*. at 32. The plaintiff frequently used a

---

[2] Contrary to plaintiff's argument on appeal, this case is not governed by *Morrison v Secura Ins*, 286 Mich App 569; 781 NW2d 151 (2009). *Morrison*, concerned whether an individual had a sufficient ownership interest in the vehicle whereas this case concerned whether the owner of a vehicle—i.e. plaintiff, "maintained" insurance on the vehicle as required under MCL 500.3101. The *Morrison* Court explained that an "'insurable interest' need not be in the nature of ownership, but rather can be any kind of benefit. . . ." However, MCL 500.3101(1) concerns owners and registrants of a vehicle, not individuals with an insurable interest. Moreover, in *Morrison* the insured mother was the title owner at the time she acquired the no fault policy before she transferred title to her daughter who was then involved in an accident. Thus, the facts of *Morrison* are also dissimilar to the present case.

BMW that was owned by and registered to his brother, but the plaintiff was not a title holder to any vehicle. *Id*. at 32, 35. The plaintiff's brother obtained insurance on the vehicle through a no-fault policy issued by the defendant Auto Club Insurance Association of Michigan (Auto Club). *Id*. at 32. In January 2004, while driving the BMW, the plaintiff was involved in a traffic accident, injuring his back. *Id*. at 33. The plaintiff commenced suit seeking PIP benefits; Bristol moved for summary disposition, arguing that, given his frequent use of the vehicle, the plaintiff was a "constructive owner" of the BMW and he was therefore required to obtain a no-fault policy for the vehicle in his own name pursuant to MCL 500.3101(1). *Id*. at 33. Bristol argued that, under MCL 500.3113(b), the plaintiff's failure to do so precluded him from recovering PIP benefits. *Id*. The trial court rejected Bristol's argument, holding that it was irrelevant whether the plaintiff was a constructive owner of the vehicle where the plaintiff's brother, the title owner, insured the BMW. *Id*.

On appeal, this Court affirmed the trial court; this Court agreed that, even assuming the plaintiff was a constructive owner of the vehicle, because the vehicle was insured by his brother, the plaintiff was not precluded from recovering benefits under MCL 500.3113(b). *Id*. at 39. Reviewing the language of MCL 500.3113(b), this Court explained:

> The statutory language links the required security or insurance solely to the vehicle. Thus, the question becomes whether the BMW, and not plaintiff, had the coverage or security required by MCL 500.3101 . . . While plaintiff did not obtain this coverage, there is no dispute that the BMW had the coverage, and that is the only requirement under MCL 500.3113(b), making it irrelevant whether it was plaintiff's brother who procured the vehicle's coverage or plaintiff. Stated differently, the security required by MCL 500.3101(1) was in effect for purposes of MCL 500.3113(b) as it related to the BMW. [*Iqbal*, 278 Mich App at 39-40.]

In *Barnes*, 308 Mich App at 1, this Court again addressed the applicability of MCL 500.3113(b). In that case, the plaintiff was injured while driving a 2004 Chevrolet Cavalier. *Id*. at 2. At the time, the plaintiff and her mother Joyce Burton lived together and were the only titled owners of the Cavalier. *Id*. Initially, Burton insured the vehicle, but she let the policy lapse after she had both legs amputated and could no longer drive the vehicle. *Id*. at 3. After that, Burton asked a friend from her church, Richard Huling, to use the Cavalier to drive Burton to and from church. *Id*. Burton gave money to Huling so that he could obtain insurance and Huling obtained a no-fault policy in his name from the defendant State Farm. *Id*. At the time of the plaintiff's accident, it was undisputed that, beside Huling, no one else insured the vehicle. *Id*.

After the accident, the plaintiff filed for PIP benefits under Huling's policy and State Farm denied the claim. *Id*. Subsequently, the plaintiff filed suit and the defendant Farmers Insurance Exchange (Farmers) was assigned the claim through the Michigan Assigned Claims Facility (MACF). *Id*. State Farm moved for summary disposition, arguing that the plaintiff was not a named insured on Huling's policy and therefore could not recover PIP benefits under the policy. *Id*. After the plaintiff failed to oppose the motion, the trial court granted State Farm's motion and dismissed State Farm from the proceeding. *Id*. None of the parties appealed the order. *Id*.

Subsequently, Farmers moved for summary disposition arguing that because neither of the owners of the Cavalier obtained an insurance policy, the plaintiff was precluded from recovering PIP benefits under MCL 500.3113(b). *Id*. Farmers relied on the trial court's dismissal of State Farm to support its argument that Huling was not an "owner" of the Cavalier for purposes of the no-fault act, and therefore, none of the owners of the Cavalier had a no-fault policy as required under MCL 500.3101(1). *Id*. Accordingly, the plaintiff was an owner of an uninsured vehicle and was ineligible for PIP benefits under MCL 500.3113(b). *Id*. The trial court granted Farmer's motion, holding that the no-fault act required that at least one of the owners have insurance on the vehicle, and because neither the plaintiff nor Burton had an insurance policy, the plaintiff was ineligible for PIP benefits. *Id*. at 5.

On appeal, the plaintiff argued that Huling had insurance and therefore she was not precluded from recovering PIP benefits under his policy. The plaintiff relied on *Iqbal*, 278 Mich App at 31, "for the proposition that she can recover as an owner as long as *anyone* had insurance on the vehicle." *Id*. at 6. This Court rejected that argument, explaining:

> *Iqbal* should not be read so broadly as to apply to even nonowners. The [*Iqbal*] Court made it clear that it was addressing the problem of whether the statute required 'each and every owner' to maintain insurance on a vehicle. The Court opined that to so hold would preclude an owner who obtained insurance from receiving PIP benefits as long as any other co-owner did not maintain coverage as well.
>
> * * *
>
> Therefore, while *Iqbal* held that each and every owner need not obtain insurance, it did not allow for owners to avoid the consequences of MCL 500.3113(b) if no owner obtained the required insurance. Thus, under the plain language of MCL 500.3113(b), *when none of the owners maintains the requisite coverage, no owner may recover PIP benefits*. [*Barnes*, 308 Mich App at 8-9 (citations omitted) (emphasis added).]

This Court concluded that because Huling, who was not an owner, was the only party that insured the Cavalier, the plaintiff was precluded from recovering PIP benefits under MCL 500.3113(b). *Id*. at 9.

In this case, plaintiff argues that the critical inquiry is whether the Stratus itself was insured as opposed to whether plaintiff maintained insurance. Plaintiff cites *Iqbal* in support of her argument. However, like the plaintiff in *Barnes*, here, plaintiff reads *Iqbal* too broadly. *Iqbal* does not stand for the proposition that the coverage requirement under MCL 500.3101(1) is satisfied when a non-owner exclusively maintains insurance for the subject vehicle. While the *Iqbal* Court used language that focused on whether the BMW was insured, that language must be viewed in the context of the case. Specifically, in *Iqbal*, the titled owner of the vehicle, the plaintiff's brother, maintained insurance for the vehicle. Therefore, at least one of the owners of the BMW maintained insurance. The insurer in *Iqbal* essentially argued that under the no-fault act, in situations involving multiple owners of a vehicle, each and every owner must maintain insurance on the vehicle. See e.g. *Barnes*, 308 Mich App at 8 (noting that "[t]he [*Iqbal* Court

-6-

made it clear that it was addressing the problem of whether the statute required 'each and every owner' to maintain insurance on a vehicle."). The *Iqbal* Court rejected that argument and instead found coverage because at least one of the owners maintained insurance. Thus, under *Iqbal*, while "each and every owner [of a vehicle] need not obtain insurance," *at least one of the owners* of the vehicle must maintain coverage. *Barnes*, 308 Mich App at 9 (emphasis added).

Here, during her deposition, plaintiff testified that she was the sole owner of the Stratus. The vehicle was titled and registered in plaintiff's name and, contrary to the argument in plaintiff's reply brief on appeal, plaintiff did not present any evidence to show that her father was a "constructive owner" of the vehicle. Accordingly, under MCL 500.3101(1) plaintiff was required to maintain no-fault coverage on the Stratus.[3] *Barnes*, 308 Mich App at 8-9. However, unlike in *Barnes*, where there was no question of fact as to whether the plaintiff maintained no-fault insurance, in this case, there is a question of fact as to whether plaintiff maintained the requisite insurance under the terms of the USAA policy. Specifically, in *Barnes*, the plaintiff was not listed on Huling's policy as an operator and she did not qualify as a "covered person" under the policy. In contrast, in this case, as discussed in more detail below, plaintiff was listed as an operator on her father's policy and there is a question of fact as to whether she was a "covered person," via her status as her father's "family member." Accordingly, summary disposition as to USAA was not warranted.

In this case, there was an unresolved question of fact that was determinative of whether plaintiff "maintained" the requisite insurance coverage under the USAA policy. Specifically, the USAA policy essentially makes no distinction between "named insured" and "family members" as both are "covered persons" under the policy. Specifically, for purposes of liability, PIP, and property protection insurance (PPI) coverage[4], the policy defines a "covered person" to include "**You** [Edward Henderson] or any **family member** for the ownership, maintenance, or use of any auto. . . ." The policy defines "family member," as follows:

> "**Family member**" means a person related to **you** by blood, marriage or adoption who resides primarily in your household. This includes a ward or foster child.

Here, plaintiff presented evidence that she resided in both her mother's house and her father's house. If plaintiff was domiciled with her father, then she resided "primarily" in his household and qualified as a "family member," and was a "covered person" under the USAA policy. In the event that the trier of fact concludes that plaintiff was a "family member" in that she resided primarily in her father's household, then plaintiff qualified as a "covered person" under the USAA policy. Because, under the terms of the USAA policy, there is no material difference

---

[3] Plaintiff cites two unpublished opinions to support her argument that *Iqbal* stands for the proposition that ownership is irrelevant when determining whether a vehicle has the requisite coverage. However, not only do unpublished opinions have no precedential authority, MCR 7.215(C)(1), both cases cited by plaintiff were issued before *Barnes* was decided in 2014. *Barnes* is a published opinion and it is therefore binding precedent. MCR 7.215(C)(2).

[4] The three types of coverage required under MCL 500.3101(1).

between a "named insured" and a "covered person," in the event that the trier of fact determines that plaintiff is a "covered person," and considering that plaintiff was listed as an operator, plaintiff will have "maintained" the requisite insurance as required by MCL 500.3101(1) such that she is not precluded from recovering PIP benefits from USAA.

Furthermore, we note that, in the event that the trier of fact concludes that plaintiff is a "family member," she will have maintained insurance under the "Newly acquired vehicle" provision of the USAA policy. Specifically, in relevant part, the USAA policy provides certain coverage for a "newly acquired vehicle" as follows:

K. "**Newly acquired vehicle**."

1. "**Newly acquired vehicle**" means a vehicle, not insured under another policy, that is acquired by you or any family member during the policy period and is:

a. A private passenger auto. . . .

* * *

2. **We** will automatically provide for the **newly acquired vehicle** the broadest coverages as are provided for any vehicle shown on the Declarations. If your policy does not provide Comprehensive Coverage or Collision Coverage, **we** will automatically provide these coverages for the **newly acquired vehicle** subject to a $500 deductible for each loss.

3. Any automatic provision of coverage under K.2. will apply for up to 30 days after the date **you** or any **family member** becomes the owner of the **newly acquired vehicle**. If you wish to continue coverage for the newly acquired vehicle beyond this 30-day period, you must request it during this 30-day period, and we must agree to provide the coverage **you** request for this vehicle. If **you** request coverage after this 30-day period, any coverage that **we** agree to provide will be effective at the date and time of **your** request unless we agree to an earlier date.

In this case, it is undisputed that at the time of the accident, plaintiff had owned the Stratus for approximately two weeks. In addition, the Stratus was a private passenger auto that was not insured on another policy. Thus, if the trier of fact concludes that plaintiff was a "family member" of Edward Henderson, then, by virtue of the "newly acquired vehicle" provision of the USAA policy, plaintiff would have maintained full coverage for the Stratus as required by MCL 500.3101(1).[5]

---

[5] USAA argues that under MCL 500.3101(1), owners or registrants of a motor vehicle must "*purchase*" a no-fault policy and cites *Citizens Ins Co of America v Federated Mut Ins Co*, 448 Mich 225; 531 NW2d 138 (1995) wherein our Supreme Court referenced MCL 500.3101(1) and stated that "Michigan's no-fault act requires the owner or registrant of a motor vehicle to

In sum, summary disposition as to defendant USAA was unwarranted. There was a question of fact as to whether plaintiff qualified under the USAA policy as a "family member." If plaintiff qualified as a "family member," then, at the time of the accident, she maintained the requisite full coverage for the vehicle as mandated by MCL 500.3101(1). Similarly, given there remained an issue of fact as to whether plaintiff maintained the requisite insurance under MCL 500.3101(1), summary disposition was not warranted as to defendants King and D&V Excavating, LLC. See MCL 500.3135(2)(c).

In contrast, summary disposition was warranted as to defendant Esurance. In the event that plaintiff qualified as Edward Henderson's family member under the USAA policy, then, necessarily, her domicile will have been found to be at her father's residence and Esurance would not have highest priority under the no-fault act. In contrast, if plaintiff is found to have domicile at her mother's residence, than she would not qualify as a "family member," and she would be precluded from recovering PIP benefits under MCL 500.3113(b). In either scenario, Esurance would not be responsible for paying benefits and therefore summary disposition as to Esurance was warranted under MCR 2.116(C)(10) albeit for different reasons than those articulated by the trial court.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. No costs awarded. MCR 7.219(A). We do not retain jurisdiction.

/s/ Patrick M. Meter
/s/ Stephen L. Borrello
/s/ Michael J. Riordan

---

purchase an automobile insurance policy. . . ." However, the Court in *Citizens* was tasked with determining the validity of residual liability policies sold to vehicle owners and the Court did not interpret the language of MCL 500.3101(1), nor was the Court determining whether a vehicle owner satisfied the requirements of MCL 500.3101(1). Moreover, the language of MCL 500.3101(1) does not reference the word "purchase" and instead provides: "[t]he owner or registrant of a motor vehicle required to be registered in this state shall *maintain* security. . . ." (Emphasis added). Thus, the issue is whether plaintiff "maintained" insurance, not whether she "purchased" the insurance policy.