*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SPECTRUM HEALTH HOSPITALS,
SPECTRUM HEALTH PRIMARY CARE
PARTNERS, doing business as SPECTRUM
HEALTH MEDICAL GROUP, and SPECTRUM
HEALTH WORTH SERVICES, doing business as
SPECTRUM HEALTH NEURO
REHABILITATION SERVICES,

UNPUBLISHED
June 8, 2023

Plaintiffs-Appellants,

v

No. 362651
Kent Circuit Court
LC No. 21-004265-NF

FARMERS INSURANCE EXCHANGE,

Defendant-Appellee.

Before: MARKEY, P.J., and MURRAY and FEENEY, JJ.

PER CURIAM.

In this action brought by plaintiffs, Spectrum Health Hospitals, Spectrum Health Primary Care Partners, and Spectrum Health Worth Services (collectively, "Spectrum"), to recover no-fault insurance benefits for the medical care and treatment for Linda Lockett (now deceased), plaintiffs appeal as of right the trial court order granting summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact, movant entitled to summary disposition as a matter of law) in favor of defendant, Farmers Insurance Exchange. Plaintiffs argue on appeal that the trial court failed to adhere to the limitations of a proper review for a motion for summary disposition by not viewing the evidence in the light most favorable to plaintiffs and not making reasonable inferences in favor of plaintiffs. For reasons stated herein, we reverse the trial court's order granting defendant summary disposition and remand for further proceedings.

## I. RELEVANT FACTS AND PROCEEDINGS

This case arises from a motor vehicle accident. Lockett was driving a vehicle when she lost control and struck a telephone pole. Two passengers were also inside of the vehicle. Lasondra Leffler, Lockett's friend, died from injuries sustained in the car accident. James Coleman, who

was in a dating relationship with Lockett, was injured but survived the accident. Lockett suffered significant injuries and received treatment from plaintiffs until she died as a result of her injuries.

At the time of the accident, Lockett was not insured nor was she domiciled with a relative who had insurance; therefore, the vehicle was not covered by a policy of insurance. Defendant was the assigned insurer. Plaintiffs filed an application with defendant for personal injury protection (PIP) benefits on behalf of Lockett. Defendant denied payment. Subsequently, plaintiffs filed a complaint against defendant, which they later amended, seeking payment of no-fault benefits.

The parties agreed that the registered owner of the uninsured vehicle was Lockett's daughter. Defendant moved for summary disposition under MCR 2.116(C)(10), however, claiming that Lockett was a constructive owner of the vehicle and excluded from receiving benefits on the basis of Coleman's testimony. Defendant referred to Coleman's testimony that Lockett kept the vehicle at the apartment for at least six weeks before the accident, had keys to the vehicle, used the vehicle a couple times a week for transportation, and did not ask for permission to use the vehicle as evidence of constructive ownership. Plaintiffs opposed the motion, arguing that defendant could not meet the burden to establish that Lockett was the constructive owner of the vehicle on the basis of Coleman's testimony alone because a closer look at Coleman's testimony indicated that he had no knowledge regarding Lockett's use of the vehicle, and use of the vehicle was essential to determine constructive ownership.

The trial court dispensed with oral arguments and granted defendant's motion for summary disposition stating that Coleman's testimony created an overall picture that strongly suggested Lockett's use of the vehicle comported with the concept of ownership.[1] The court specifically noted that Coleman observed Lockett's use of the vehicle for more than 30 days and that he was in the best position to have knowledge regarding Lockett's use of the vehicle. The court explained that Coleman testified about several facts that would suggest ownership, including: his belief that it was Lockett's vehicle, the vehicle being at her apartment, Lockett had a set of keys, she put gas into the vehicle, he never saw anyone else use the vehicle, Lockett would use the vehicle whenever she needed to, and he never heard Lockett ask permission from someone else to use the vehicle. The court determined that Lockett's vehicle usage exhibited a regular pattern of unsupervised usage and that nearly all the factors the court must consider when analyzing ownership weighed in favor of ownership. Plaintiffs now appeal.

## II. ANALYSIS

Plaintiffs argue that the trial court erred by granting defendant's motion for summary disposition because the court made its determination on the basis of Coleman's inconsistent and speculative testimony. Plaintiffs claim that the trial court did not view the evidence in a light most favorable to plaintiffs, did not make inferences in favor of plaintiffs, proceeded to act as fact-finder, and made credibility determinations. We agree.

---

[1] Apparently, several unsuccessful attempts were made to depose Mary Washington, Lockett's daughter, who registered but failed to insure the 2007 Dodge Nitro involved in the accident.

This Court reviews de novo a trial court's decision whether to grant a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). This Court also reviews de novo whether the trial court properly selected, interpreted, and applied the court rules applicable to the motion for summary disposition. *Brecht v Hendry*, 297 Mich App 732, 736; 825 NW2d 110 (2012). This Court reviews a motion for summary disposition on appeal in the same way that the trial court was obligated to review it. See *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 440; 814 NW2d 670 (2012). In other words, this Court adopts the role of the trial court and determines whether the motion should have been granted or denied on the merits. See *Morales v Auto-Owners Ins*, 458 Mich 288, 294; 582 NW2d 776 (1998). Review is limited to the evidence that had been presented to the trial court at the time the motion was decided. *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 475-476; 776 NW2d 398 (2009).

Summary disposition under MCR 2.116(C)(10) is available when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." This motion tests the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Attorney General v PowerPick Players' Club of Mich, LLC*, 287 Mich App 13, 26-27; 783 NW2d 515 (2010) (quotation marks and citation omitted).

When making a motion under MCR 2.116(C)(10), the moving party has the initial burden to identify "the issues as to which the moving party believes there is no genuine issue as to any material fact." MCR 2.116(G)(4). The moving party must support the motion with "[a]ffidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted in the motion . . . ." MCR 2.116(G)(3). If the moving party properly asserts and supports the motion for summary disposition, the "burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists." *Quinto v Cross and Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). The nonmoving party cannot rely on mere allegations or denials in the pleadings to establish a question of fact. *Id*. Rather, the nonmoving party must present evidence that establishes that there is a genuine issue of disputed fact on the issue raised by the moving party. *Barnard Mfg Co, Inc*, 285 Mich App at 370, 374-375.

Notably, the trial court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party and must draw all reasonable inferences in favor of the nonmoving party. MCR 2.116(G)(5); *Dextrom v Wexford Co*, 287 Mich App 406, 415-416; 789 NW2d 211 (2010). Circumstantial evidence can create a factual issue for trial. See *Bergen v Baker*, 264 Mich App 376, 387; 691 NW2d 770 (2004). But the court may not make findings of fact or weigh credibility in deciding a motion for summary disposition. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994).

In this case, the trial court granted defendant's motion for summary disposition and deemed Lockett the constructive owner of the vehicle involved in the accident. The court based its decision on Coleman's testimony that described Lockett's use of the vehicle before the accident. The court explained that "[a]thought Coleman's testimony contains *some uncertainties regarding his knowledge of Lockett's use of the vehicle*, *the overall picture* he presents *strongly suggests* it

comported with the concepts of ownership." [Emphasis added.] Thus, the court found the evidence was sufficient to conclude that Lockett was the vehicle's constructive owner.

Under Michigan's no-fault insurance act, MCL 500.3101 *et seq*., an owner or registrant of a motor vehicle is required to carry insurance for personal protection, property protection, and residual liability. *Ardt v Titan Ins Co*, 233 Mich App 685, 689; 593 NW2d 215 (1999). The owner of an uninsured vehicle is not entitled to PIP benefits for bodily injury resulting from an accident involving that vehicle. *Id*. A vehicle can have a titled owner as well as a constructive owner. An owner of a vehicle includes: a person who holds the legal title to a motor vehicle, or a person having use of a motor vehicle for a period that is greater than 30 days. MCL 500.3101(3)(*l*)(*i*) and (*iii*).

This Court has clarified that "ownership follows from *proprietary* or *possessory* usage, as opposed to merely incidental usage under the direction or with the permission of another." *Ardt*, 233 Mich App at 691(emphasis in original). In *Ardt*, the trial court granted summary disposition after finding that any use of a vehicle under MCL 500.3101(1) for thirty days or more qualified Ardt as the owner of the uninsured truck. This Court reversed citing testimony that Ardt's use was occasional and for minor purposes over a thirty day period and testimony that he drove the truck regularly during that time. *Id*. at 689-691. "Accordingly, there remains a genuine issue of material fact for resolution at trial, rendering summary disposition with regard to this issue inappropriate." *Id*. at 691. The focus is on the "nature of the person's right to use the vehicle." *Twichel v MIC Gen Ins Corp*, 469 Mich 524, 530; 676 NW2d 616 (2004). A regular pattern of unsupervised usage supports ownership rather than spotty or exceptional use that requires permission. *Chop v Zielinski*, 244 Mich App 677, 624 NW2d 539 (2001). Michigan courts also consider a variety of factors to evaluate constructive ownership including:

1. Whether the individual used the vehicle on a regular or sporadic/spotty basis. *Chop*, 244 Mich at 681; *Detroit Med Ctr v Titan Ins Co*, 284 Mich App 490, 493-494; 775 NW2d 151 (2009); *Ardt*, 233 Mich App at 691.

2. Whether the individual took possession of the vehicle pursuant to a purchase, lease, or other agreement, and the nature of that agreement. *Twichel*, 469 Mich at 531.

3. Whether the individual had to ask permission to use the vehicle. *Detroit Med Ctr*, 284 Mich App at 493-494.

4. Whether the individual subjectively believed the vehicle to be her own. *Chop*, 244 Mich App at 681-682.

5. Whether the individual was responsible for repairs and maintenance or for putting gasoline in the vehicle. *Kessel v Rahn*, 244 Mich App 353, 357-358; 624 NW2d 220 (2001).

6. Whether the individual's use of the vehicle was exclusive or shared. *Id*. at 357.

7. Where the vehicle was regularly parked. *Chop*, 244 Mich App at 681.

8. Whether the individual had her own set of keys to the vehicle. *Iqbal v Bristol West Ins Group*, 278 Mich App 31, 34; 748 NW2d 574 (2008).

In this case, Coleman testified that while he was incarcerated, Lockett informed him that she acquired a vehicle, although he also testified that "[s]he didn't tell me she had a vehicle or anything." Upon his release from jail, Coleman returned to the apartment that he shared with Lockett. The vehicle was parked at the apartment and remained at the apartment until the date of the accident, roughly six weeks after Coleman's release from jail. Coleman explained that Lockett had a set of keys for the vehicle, he *thought* that she paid for the vehicle and put gas in the vehicle but he admitted "I don't, pretty much, I don't" when asked whether Lockett paid for the car or put gas in it. He later admitted he never saw her put gas into it. He also *believed* that Lockett would use the vehicle "when she wanted to use it, whenever she needed to use it," but he only saw her drive it a few times. Coleman hesitantly agreed with defendant's counsel that Lockett may have used the vehicle a couple times a week when questioned about Lockett's usage again, however, but he was gone to work during the day. He did admit that Lockett did use public transportation to get around before the accident but that was prior to his incarceration.

Portions of Coleman's testimony clearly lacked confidence regarding specific aspects of Lockett's use of the vehicle, however. For example: Coleman did not know how Lockett obtained the vehicle, he did not actually know if she was paying for the vehicle ("I don't know if she was paying;" "I think it was paid for"), he was unsure if she paid for repairs to the vehicle, he did not actually know if she had to ask permission to use the vehicle, he was unsure if anyone else had a set of keys to the vehicle, and he was unsure on how many times Lockett used the vehicle.

Indeed, Coleman's inconsistencies and speculations were readily apparent in his testimony. Many of Coleman's responses included statements such as: "I don't know," "I think," "I believe," "I would believe so," "I wouldn't know, but it would be my guess," "I don't know what's going on during the day," and "maybe." The only clear factual indications made by Coleman were that the vehicle was regularly parked at Lockett's apartment, that she had keys to the vehicle, and that Lockett used the vehicle at least a few times during the month leading up to the accident. The trial court overlooked many of the testimonial uncertainties to determine that Coleman's testimony was a clear indication of constructive ownership. A trial court is not permitted to make credibility determinations. *Skinner*, 445 Mich at 161. Yet, the record contains evidence that both favors and disfavors a finding of constructive ownership. Cf. *White v Taylor Distributing Co, Inc.* 482 Mich 136, 142-143; 753 NW2d 591 (2008) ("But, under the legal and factual circumstances, '[w]e do not ignore the inconsistencies in defendant's statements…,'" citing *Bridwell v Segel*, 362 Mich 102, 106; 106 NW2d 386 (1960), as the issues presented were proper questions for the jury, not for summary disposition).

Under the eight factors that are considered in evaluating constructive ownership under MCL 500.3113(b), Coleman's testimony was definitive on two factors: the vehicle was regularly parked at Lockett's apartment and Lockett had her own set of keys. Even though he resided with her for 6 weeks prior to the accident, Coleman saw her use the vehicle a few times in total but said she could use it whenever she wanted.[2] The trial court found these facts to indicate regular versus

---

[2] When asked if Lockett could just get in and drive away if she wanted to take a trip to another state or for the weekend, Coleman responded that he "believed so" but also added "I mean, I

-5-

spotty use as a third factor supporting constructive ownership. The other five factors are not dispositive in defendant's favor and create a genuine issue of material fact, however. For example, Coleman did not know how she got the Dodge Nitro, whether she had to ask permission to use it, or whether Lockett (not Coleman) "subjectively believed the vehicle to be her own," *Chop,* 244 Mich App at 681-682. Coleman did not know if Lockett let anyone else drive the vehicle. He also testified he was "sure" that Lockett paid to put gas in the vehicle but also testified he never saw her put gas in the vehicle and had no idea if she paid for car repairs. *Kessel,* 244 Mich App at 357-358.

The evidence is not so definitive that a reasonable juror would be compelled to find for or against Lockett as the owner, meaning that there are genuine issues of material fact. See also Baldwin v Nall, 323 Mich 25, 29; 34 NW2d 539 (1948) ("A jury may believe the most positive evidence, even when it stands uncontradicted; and the judge cannot take from them their right of judgment" (citations omitted)). This Court has concluded that a genuine issue of material fact exists when some testimony supported regular use of a vehicle but other testimony suggested the plaintiff only used the vehicle a few times. See *Ardt*, 233 Mich App at 689-691. Likewise, whether Lockett had constructive ownership of the vehicle remained an open question of material fact based upon Coleman's inconsistent testimony. "The question of ownership is one of fact that is to be decided by the factfinder." *Botsford Gen Hosp v Citizens Ins Co*, 195 Mich App 127, 133; 489 NW2d 137 (1992).

Accordingly, we conclude that the trial court improperly granted summary disposition for defendant as genuine issues of material fact exist regarding whether Lockett was the constructive owner of the 2007 Dodge Nitro.

Reversed and remanded. We do not retain jurisdiction. Plaintiffs may tax costs.

/s/ Christopher M. Murray
/s/ Kathleen A. Feeney

---

wouldn't know, but it would be my guess she could." This is representative of Coleman's equivocal testimony throughout his deposition.